UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


**ASHLEY M. MARDIS,**

    **Plaintiff,**

                                            Civil Action 2:18-cv-337
                                            Judge James L. Graham
    v.                                 Magistrate Judge Chelsey M. Vascura


**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**


**REPORT AND RECOMMENDATION**

Plaintiff, Ashley M. Mardis ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for a period of disability, disability insurance benefits, and supplemental security income. This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 10), the Commissioner's Response in Opposition (ECF No. 16), Plaintiff's Reply (ECF No. 17), and the administrative record (ECF No. 6). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

                            **I.       BACKGROUND**

Plaintiff protectively filed her applications for a period of disability and disability insurance benefits on November 12, 2014. She protectively filed her application for supplemental security income on November 13, 2014. In her applications, Plaintiff alleged a

disability onset of December 31, 2007. Plaintiff's applications were denied initially on March 11, 2015, and upon reconsideration on May 14, 2015. Plaintiff sought a hearing before an administrative law judge. Administrative Law Judge Jeannine Lesperance (the "ALJ") held a hearing on March 28, 2017, at which Plaintiff, represented by counsel, appeared and testified. Vocational Expert Richard P. Oestreich (the "VE"), also appeared and testified at the hearing. On August 2, 2017, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. On February 13, 2018, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. Plaintiff then timely commenced the instant action.

## II. THE ADMINISTRATIVE DECISION

On August 2, 2017, the ALJ issued her decision. (R. at 14-29.) The ALJ first found that Plaintiff meets the insured status requirements through December 31, 2012. (*Id*. at 16.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged

---

[1.] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, see *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual

in substantial gainful activity since December 31, 2007, the alleged onset date. (*Id.*) At step two, the ALJ found that from the alleged onset date through the date last insured, Plaintiff had the severe impairments of diabetes mellitus; right shoulder degenerative joint disease; obesity; and anxiety disorder. (R. at 17.) The ALJ further found that from October 14, 2014, the date of Plaintiff's application for supplemental security income benefits, Plaintiff had the severe impairments of diabetes mellitus; right shoulder degenerative joint disease; obesity; anxiety disorder; and the new impairments of bilateral carpal tunnel syndrome; attention deficit disorder; and depression. (*Id.*) The ALJ found that Plaintiff's alleged knee and back impairments were not medically determinable impairments during the entire period of adjudication. (R. at 18.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) At step four of the sequential process, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, I find that prior to the date last insured of December 31, 201[2], the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she could occasionally reach overhead with the right upper extremity; frequently handle with the right upper extremity; occasionally stoop, kneel, crouch or crawl; occasionally climb ramps and stairs; but never climb ladders, ropes or scaffolds; perform simple and moderately complex tasks at an average pace, but not perform jobs with strict time or production demands; occasionally interact with others; and adapt to occasional changes in work duties that are explained.
>
> I find that, beginning on October 14, 2014, the application date for Supplemental Security Income benefits, the claimant has had [the] same residual functional

---

functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

3

capacity as for the Title II period, except that she could frequently handle *and finger* with the *bilateral* upper extremities (due to the new diagnosis of carpal tunnel syndrome).

(R. at 21.)

Relying on the VE's testimony, the ALJ found that Plaintiff is capable of performing her past relevant work as a packager and assembler. (R. at 27.) The ALJ also found that Plaintiff could perform other work in the national economy. (*Id*. at 27-28.) She therefore concluded that Plaintiff was not disabled under the Social Security Act. (*Id*. at 29.)

In her Statement of Errors (ECF No. 10), Plaintiff raises two contentions of error. First, Plaintiff asserts that the ALJ erred in finding that her alleged knee and back impairments were not medically determinable impairments. Plaintiff next posits that the ALJ erred in evaluating the opinions of her physical therapist, Annette Demos, PT ("Ms. Demos").

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV. ANALYSIS

As set forth above, in her Statement of Errors (ECF No. 10), Plaintiff first asserts that the ALJ erred in finding that her alleged knee and back conditions were not medically determinable impairments. Plaintiff contends that because the ALJ failed to consider her knee and back impairments when formulating her RFC, this case should be reversed and remanded. Plaintiff next asserts that the ALJ erred in evaluating the opinions of her physical therapist, Ms. Demos. The undersigned considers these contentions of error in turn.

## A. The ALJ's Step Two Determination

At step two, the ALJ is required to consider whether Plaintiff's alleged impairments constitute "medically determinable" impairments. *See* 20 C.F.R. § 404.1508; 20 C.F.R. § 416.920(a)(4)(ii); 20 C.F.R. § 404.1520(a)(4)(ii). A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques," and "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. § 404.1508; 20 C.F.R. § 416.908.[2] Only evidence from acceptable medical sources can establish a medically determinable impairment. 20 C.F.R. § 404.1513(a) ("We need evidence from acceptable medical sources to establish whether you have medically determinable impairment(s)"). Additionally, an impairment must meet the durational requirement, meaning, "it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509. "If an alleged impairment is not medically determinable, an ALJ need not consider that impairment in assessing the RFC." *See Jones v. Comm'r of Soc. Sec.*, No. 3:15-CV-00428, 2017 WL 540923, at *6 (S.D. Ohio Feb. 10, 2017) (citing *Rouse v. Comm'r of Soc. Sec.*, No. 2:16-CV-0223, 2017 WL 163384, at *4 (S.D. Ohio Jan. 17, 2017) (stating that a "claimed condition which is not 'medically

---

[2] The undersigned notes that the Commissioner cites to the definition of "medically determinable impairment" set forth in 20 C.F.R. § 404.1521 (2017), which was not effective until March 27, 2017. *See Shields v. Comm'r of Soc. Sec.*, 732 F. App'x 430, 437 (6th Cir. 2018) (explaining "Effective March 27, 2017, . . . the Social Security Administration published final rules that revised the rules and regulations applicable to the evaluation of medical evidence for claims filed on or after that date.") (citing Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, 2017 WL 168819, at *5844–45, 5869, 5880). Because Plaintiff protectively filed her applications for benefits in 2014, 20 C.F.R. § 404.1521 (2017) is inapplicable. Rather, 20 C.F.R. §§ 404.1508 was in effect at the time Plaintiff filed her applications for benefits.

determinable' need not be considered at all" in determining a claimant's RFC); 20 C.F.R §

404.1527(a)(1); 20 CFR § 404.1545(a)(2)).

The ALJ's conclusion that Plaintiff did not have medically determinable knee or back impairments is supported by substantial evidence. The ALJ thoroughly discussed her reasons for concluding that Plaintiff's allegations regarding knee and back pain do not amount to a medically determinable impairment, explaining as follows:

> Finally, I find that the claimant's alleged back and knee impairments were not medically determinable during the entire period of adjudication. Pertinent regulations require that in order to establish a "severe" impairment, a claimant must first document a medically determinable impairment. A medically determinable impairment must result from an anatomical, physiological or psychological abnormality, which is shown to exist by medically acceptable clinical and laboratory diagnostic techniques (20 CFR 404.1508; 416.908). Such an impairment must be established by medical evidence consisting of signs, symptoms and laboratory findings and not just by subjective statements or report of symptoms (20 CFR 404.1508; 416.908; SSRs 96-3p and 96-4p). In September 2012, an x-ray of the lumbar spine was unremarkable (6F/69). In December 2012, the claimant was diagnosed with bilateral low back pain, however, musculoskeletal examination was normal (6F/7). From November 2013 to February 2014, examinations indicated no deformity or scoliosis of the spine, full range of motion, intact sensation, and normal strength (7F/3; 7F/10). From April to October 2014, the claimant received chiropractic treatment (10F/1-21). In September 2015, examination again demonstrated no musculoskeletal deformity or scoliosis, intact sensation and normal strength (17F/5). Moreover, there is no additional evidence of record demonstrating abnormal objective findings, diagnoses, treatment or more than minimal limitations in the claimant's ability to perform work-related activities with regard to these impairments. Therefore, I find that during the entire period of adjudication, the claimant did not have a medically determinable back or knee impairment.

(R. at 18.) Here, the ALJ reasonably concluded that Plaintiff's knee and back conditions were not medically determinable impairments because they were not established by medical evidence consisting of signs, symptoms, and laboratory findings from an acceptable medical source. *See* 20 C.F.R. § 404.1508; 20 C.F.R. § 416.908; 20 C.F.R. § 404.1513(a); *see also McCluskey v.*

7

*Comm'r of Soc. Sec.*, No. 1:12-CV-617, 2013 WL 3776573, at *3–4 (S.D. Ohio July 17, 2013) ("Given the paucity of evidence supporting a back or spinal impairment, the ALJ's finding of no medically determinable low back impairment is supported by substantial evidence.").

In her Statement of Errors, Plaintiff purports to set forth evidence from acceptable medical sources establishing that her knee and back conditions are medically determinable impairments. (Pl.'s Statement of Errors at 7, ECF No. 10.) Plaintiff first asserts that the ALJ ignored treating physician Dr. Inman's notation "that [she] suffers from both chondromalacia of the bilateral patella and chronic lower back pain." (*Id.* (citing R. at 1261).) It is well established, however, that an ALJ is not required to "discuss every piece of evidence in the record to substantiate [her] decision." *Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 254 (6th Cir. 2016) (citing *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004)); *see also Dykes ex rel. Brymer v. Barnhart*, 112 F. App'x 463, 467–68 (6th Cir. 2004) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." (citations omitted)). Moreover, a diagnosis is insufficient to establish a medically determinable impairment. *See* 20 C.F.R. § 404.1508 (providing that a medically determinable impairment "must be established by medical evidence consisting of signs, symptoms, and laboratory findings. . ."); *see also* 20 C.F.R. § 404.1513(a)(3) (providing that "[f]or claims filed . . . before March 27, 2017, other medical evidence does not include a diagnosis, prognosis, or a statement that reflects a judgment(s) about the nature and severity of your impairment(s)"). Plaintiff points to no medical evidence from Dr. Inman that supports her allegations of medically determinable knee and back impairments.

8

Plaintiff's chiropractor's treatment notes are also insufficient to establish that her knee and back conditions are medically determinable impairments because a chiropractor is not an "acceptable medical source." (*See* Pl.'s Statement of Errors at 8, ECF No. 10 (asserting that Plaintiff's chiropractor's "examination notes also consistently document reduced range of motion, tenderness with palpation, spasms, and muscle tension.")); *see also* 20 C.F.R. § 404.1513(d)(1); 20 C.F.R. § 416.913(d); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997) (finding that a treating chiropractor is not an "acceptable medical source"); SSR 06-3p, 2006 WL 2329939, at *2 ("Information from these 'other sources' [including chiropractors] cannot establish the existence of a medically determinable impairment."). Moreover, the ALJ's decision demonstrates that she considered Plaintiff's chiropractor's notes, but found that "[i]n September 2015, examination again demonstrated no musculoskeletal deformity or scoliosis, intact sensation and normal strength (17F/5)." (*See* R. at 18.) Thus, although Plaintiff's chiropractor noted reduced range of motion, tenderness of palpation, spasms, and muscle tension, it does not appear that those symptoms lasted for a continuous period of twelve months. *See* 20 C.F.R. § 404.1509 (providing that an impairment "must have lasted or must be expected to last for a continuous period of at least 12 months.").

The remaining evidence Plaintiff relies upon likewise fails to support her claim that her knee and back conditions are medically determinable impairments. For example, Plaintiff points to Dr. Miller's treatment notes, which note that she exhibited tenderness in her cervical paraspinal muscles (neck) and cervical adenopathy[3] (R. at 941), but she fails to explain how

---

3 Cervical adenopathy refers to large or swollen lymph glands in the neck. *Definition of Adenopathy*, NATIONAL CANCER INSTITUTE DICTIONARY OF CANCER TERMS, *available at* https://www.cancer.gov/publications/dictionaries/cancer-terms/def/adenopathy.

9

such notations establish her knee and back impairments. Plaintiff further asserts that her physical therapist, Ms. Demos, opined that she suffers from back and knee problems that limit her ability to work. (Pl.'s Statement of Errors at 8, ECF No. 10.) As the ALJ pointed out, however, "[a]s an 'other source,' Ms. Demos cannot establish the existence of medically determinable impairments." (R. at 25.) *See* 20 C.F.R. § 404.1513(d); 20 C.F.R. § 416.913(d); *Noto v. Comm'r of Soc. Sec.*, 632 F. App'x 243, 249 (6th Cir. 2015) (finding that a physical therapist is a "non-acceptable medical source" under the regulations)**.** Additionally, as discussed below, the ALJ reasonably discounted Ms. Demos' opinions. Accordingly, Plaintiff failed to point to objective medical evidence from an acceptable medical source that is sufficient to establish that her knee and back conditions were medically determinable impairments, and the undersigned finds no error in the ALJ's step two findings.

Moreover, any error at step two would be harmless because the ALJ did, in fact, consider Plaintiff's knee and back conditions in assessing her RFC. (*See* R. at 21-27); *See Jones*, 2017 WL 540923, at *7 (explaining that "any error at Step Two is harmless if the ALJ considers all impairments in determining Plaintiff's RFC"). For example, the ALJ considered that Plaintiff reported issues with her back and knees (R. at 22) and specifically considered the opinions of Plaintiff's physical therapist, Ms. Demos (R. at 25-26). The ALJ ultimately concluded that neither Plaintiff's subjective complaints nor Ms. Demos' opinions were entirely consistent with the objective evidence in the record (R. at 24-26).[4] Thus, because the ALJ considered

---

4 Plaintiff does not challenge the ALJ's credibility determination, and the undersigned declines to disturb it. *See McPherson v. Kelsey*, 125 F.3d 989, 996-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (internal quotation marks and citations omitted)). Additionally, as set forth below, the ALJ reasonably discounted Ms. Demos' opinions.

Plaintiff's allegations regarding her knee and back in assessing her RFC, any error at step two was harmless. The undersigned therefore **RECOMMENDS** that Plaintiff's first contention of error be **OVERRULED**.

B.      **The ALJ's Consideration of Plaintiff's Physical Therapist's Opinion**

The undersigned finds no error in the ALJ's evaluation of the opinions of Plaintiff's physical therapist, Ms. Demos.

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(b). The applicable regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(1).

Physical therapists like Ms. Demos, however, are not "acceptable medical sources" and instead fall into the category of "other sources." 20 C.F.R. §§ 404.1513(d), 416.913(d). Although the ALJ must consider opinions from "other sources" and "generally should explain the weight given," . . . "other-source opinions are not entitled to any special deference." *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 550 (6th Cir. 2014) (citation omitted); *see also Cole v. Astrue*, 661 F.3d 931, 938 n.4 (6th Cir. 2011) (noting "the importance of addressing the opinion of a mental health counselor as a valid 'other source' providing ongoing care"); 20 C.F.R. § 416.927(f)(2) (providing that the ALJ "generally should explain the weight given to opinions

from these sources or otherwise ensure that the discussion of the evidence in the . . . decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning. . .") The ALJ considers "other source" opinions using the same factors for weighing a medical opinion from an acceptable medical source, but "not every factor for weighing opinion evidence will apply in every case because the evaluation of an opinion from a medical source who is not an acceptable medical source . . . depends on the particular facts in each case." 20 C.F.R. § 416.927(f)(1). The relevant factors include the examining relationship, the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the source. 20 C.F.R. § 416.927(c)(1)-(6).

Here, the ALJ considered the opinions of Ms. Demos and provided "partial weight" to her May 2016 opinion and "little weight" to her December 2016 opinion. (R. at 25.) The ALJ explained the weight assigned to Ms. Demos' opinions as follows:

> In May 2016, Annette Demos, PT, opined that the claimant could perform light work with occasional bending, kneeling, crawling, stair climbing, and walking (20F/6-7). She further assessed that the claimant could never squat or perform gross motor coordination, but could frequently perform fine motor coordination (20F/6-7). Ms. Demos does not qualify as an "acceptable medical source" as defined by 20 CFR 404.1502 and 416.902, though she does qualify as an "other source" as defined by 20 CFR 404.1513(d) and 416.913(d). As an "other source," Ms. Demos cannot establish the existence of medically determinable impairments. However, I may use statements from "other sources" as evidence to show the severity of the individual's impairment and how it affects the individual's ability to function. Though Ms. Demos is not an acceptable medical source under the regulations, I have considered her opinion, and afford it[ ] only partial weight, as it is partially consistent with the overall evidence of record. Significantly, her assessed light exertional level is supported by evidence demonstrating good range of motion, intact sensation, normal coordination, and full strength (2F/3; 3F/3; 4F/3; 5F/58; 5F/87; 6F/1; 6F/8; 6F/12; 6F/17; 6F/20; 6F/25; 7F/3; 7F/10; 12F/36; 12F/41; 17F/5; 17F/11; 25F/4; 25F/53; 38F/4). However, these findings are not consistent with Ms. Demos' assessment that the claimant could never squat or

perform gross motor coordination. Ms. Demos was not a treating provider and saw the claimant only briefly to perform a functional capacity exam. Ms. Demos appears to be basing many of her conclusions on the claimant's subjective complaints rather than tying them to an established severe impairment, which shows a lack of understanding of our program. For example, she suggests that the claimant might be limited in sitting but there is no established impairment that would be expected to affect her ability to sit. Therefore, I give only partial weight to the opinion of Ms. Demos.

In December 2016, Ms. Demos further opined that the claimant did not meet the requirements for any levels of work due to her complaint of pain and that even sedentary work aggravates her symptoms (35F/7-10). She stated that the claimant could not bend, occasionally squat, kneel, climb, climb stairs, walk, and perform gross motor coordination, and could frequently perform fine motor coordination (35F/9-10). Again, I have considered her opinion as an "other source" and afford it little weight, as her assessment appears to be based on the claimant's subjective complaints. Moreover, her opinion is not consistent with the overall evidence of record demonstrating normal physical findings including good range of motion, intact sensation, normal coordination, and full strength (2F/3; 3F/3; 4F/3; 5F/58; 5F/87; 6F/1; 6F/8; 6F/12; 6F/17; 6F/20; 6F/25; 7F/3; 7F/10; 12F/36; 12F/41; 17F/5; 17F/11; 25F/4; 25F/53; 38F/4). Accordingly, I give little weight to this opinion from Ms. Demos.

(R. at 25-26.)

Applying the above standards, the undersigned finds that the ALJ did not err in her consideration and weighing of Ms. Demos' opinions. Contrary to Plaintiff's assertion, the ALJ did not discredit Ms. Demos' opinions simply because she was not an "acceptable medical source." (Pl.'s Statement of Errors at 11, ECF No. 10.) With respect to Ms. Demos' May 2016 opinion, the ALJ properly considered and reasonably concluded that it was only partially consistent with the overall evidence in the record. (R. at 25); *see* 20 C.F.R. § 416.927(c)(3)-(4) (identifying "supportability" and "consistency" as relevant considerations when evaluating an opinion). The ALJ also properly considered that Ms. Demos was not a treating provider and only saw Plaintiff briefly to perform a functional capacity examination. *See* 20 C.F.R. § 416.927(c)(2) (identifying nature and extent of the treatment relationship, the length of the

treatment relationship, and frequency of examination as relevant considerations). Finally, the ALJ reasonably discounted Ms. Demos' opinion because she appeared to base many of her conclusions on Plaintiff's subjective complaints, which the ALJ did not find to be entirely credible. *See* 20 C.F.R. § 416.927(c)(3)-(4); *see also Tate v. Comm'r of Soc. Sec.*, 467 F. App'x 431, 433 (6th Cir. 2012) (finding that the ALJ gave sufficient reasons for discounting the opinion of a treating physician in part because the opinion appeared to be based on "subjective complaints, without sufficient support from objective clinical or neurological findings").

The undersigned likewise finds no error in the ALJ's decision to assign "little" weight to Ms. Demos' December 2016 opinion. The ALJ again noted that Ms. Demos' opinions appeared to be based on Plaintiff's subjective complaints. The ALJ also reasonably found that Ms. Demos' opinion "is not consistent with the overall evidence of record demonstrating normal physical findings including good range of motion, intact sensation, normal coordination, and full strength." (R. at 26 (citing R. at 484, 491, 497, 560, 589, 603, 605, 614, 619, 622, 627, 714, 721, 931, 936, 997, 1003, 1110, 1159, 1472).) Contrary to Plaintiff's assertion, neither Dr. Inman's letters stating that Plaintiff was unable to work nor the temporary work excuses from Union Hospital deprive the ALJ's decision of substantial evidence. (Pl.'s Statement of Errors at 12, ECF No. 10.) As the ALJ explained, Dr. Inman's November 2016 work excuse is vague, does not provide specific workplace abilities and limitations, and opines on an issue reserved to the Commissioner. (R. at 26 (citing R. at 1260-61).) The other work excuses Plaintiff relies upon are similarly deficient. (*See* R. 1491, 1492, 1493, 1494.) The undersigned concludes that the ALJ properly considered the evidence in the record and reasonably concluded that Plaintiff is not as limited as Ms. Demos opines.

14

In summary, the undersigned finds no error in the ALJ's consideration and weighing of the opinions of Ms. Demos. Accordingly, the undersigned **RECOMMENDS** that Plaintiff's second contention of error be **OVERRULED**.

## VI      DISPOSITION

From a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VI.     PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of

the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


  /s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE